Correctional Center and the Attorney General of Delaware. Mr. Coughlin, when you're ready. Good morning, Your Honors. Richard Coughlin for Claude Lacombe. And with the Court's permission, I'd like to reserve three minutes for rebuttal. Granted. Thank you, Your Honor. First of all, let me start by acknowledging that Mr. Lacombe has to carry a very heavy burden to prevail on this appeal, both in terms of establishing that there was a breach of the plea agreement and a more difficult burden than I had briefed, which I apologize for, but that he has to show prejudice. He's got to meet both EDPA and Brecht. I think the Supreme Court made that clear in Brown v. Davenport. So that's daunting to show that a number of judges at various levels have wrongly concluded, contrary to controlling law, that first of all, that there was a breach of the plea agreement. And I would submit that Mr. Lacombe's due process rights were, in fact, violated. He made an agreement. In this doubly deferential context, how are they violated in a way that there can be a remedy? I mean, obviously we can get back to whether they indeed were violated. But how do we get around the double deferential test? Well, I'm not quite sure. In other words, before the state court, it was under Strickland. He had to show prejudice. Then under Habeas, you have EDPA deference. Was there an unreasonable application, among other things, by the state court? And in this, going back to direct review, how was there prejudice under Strickland? And then we'll get to Habeas in a minute. There was prejudice, Your Honor, in the sense that Mr. Lacombe made an agreement with the state for a recommendation of 22 years. The state, at the end of an oration, which was everything but a recommendation for 22 years, was an exercise in advocacy designed to portray him as not only as culpable as the person who carried the gun and committed the murders, but who did so, and as the state acknowledged. Is there a PSR, a pre-sentence report, prepared? There was a pre-sentence report. Did it note that your client was the one who came up with the idea of the particular robbery? Obviously not that somebody would get murdered. His brother did the murder, but he was the person behind it? Yes, and the state was within their rights to explain to the court that Claude Lacombe planned the robbery with his brother. But in effect, forgetting the state for the moment, it looks like when you read then-Superior Court Judge Brady's decision, that it was pretty clear that she was going to sentence as she did no matter what was said. Right, but his agreement is with the state, and they've got some obligation when they take that on. When they say they're going to recommend something, that they're going to endorse it, they're going to do something in support of that recommendation. It has no restrictions on what the judge can do or not do. No, that's correct. It was not binding on the sentencing judge, but the context was, and that's part of what I would submit is the error here in the lower court's analysis was because the state court wasn't bound by the agreement, the reviewing court said, well, it doesn't matter then, whatever happened, there can't be prejudice because the judge was free to do whatever she wanted to do with sentencing anyway. And under that test, there can't ever be a violation. And, you know, what's the point of having a plea agreement? I guess my question is did the prosecutor at the sentencing say anything outside of what was in the pre-sentence report? Yeah. Characterizing him as a gangster rapper wannabe who was irredeemably determined to live a life of violence and misogyny and engaged in exactly that on this day, you know, on the basis of some journals or whatever that were seized at the time of his arrest. And that's, you know, that's not reciting the facts of the case. That's not advising the court of relative culpability. That's taking the opportunity to advocate for a sentence that's comparable to the life sentence that you've got to impose on this other person. And you're saying? The state did note explicitly that it was recommending that your client receive a sentence of 22 years, followed by a lengthy period of probation. Right. And I would characterize that as an asterisk, that at the end of this oration that included, you know, just before that, no matter what sentence you decide to impose, don't be fooled by him. Don't be fooled by his relative, his apparent culpability. And instead, you know, when they describe Paul's actions, it's, you know, they acknowledge that he went in there without the intent to kill anybody and he panicked and this horrible consequences ensued. When they talk about Claude, it's as if he sent him in there to commit two executions. And that's not what happened. And it's as if he's as culpable as the person who did those acts. And the law provides that, of course, you know, it's felony murder and conspiracy and so forth. But in terms of what the sentence should be and what the state agreed to, his reasonable expectation would be that they were going to at least endorse and explain to the court if, you know, if you're going to engage in this elocution that is designed to portray him in a particularly negative light when you're doing it in the context of a joint sentence that the person has to get life. And then at the end say, well, you know, we're, you know. So that really, you go to the Delaware Supreme Court, Justice Fallahor writes a decision basically saying there is, they find that there's no prejudice under Strickland. You then go up to habeas to then Chief Judge Stark. And you got, as you said at the very outset, another hurdle to overcome, that somehow this is an unreasonable application of law. What gets you over that hurdle then? You can't say it's just done because there are, Puckett makes very clear, that there are no structural errors with respect to something here. Right, but there's still the breach of plea agreement and the analysis that a court has to undertake to determine whether the reasonable expectations of the defendant were met. And that wasn't done here. But the point is a breach of a plea agreement here is subject to harmless error. And the state Supreme Court said that there was, in effect, harmless error because there was no prejudice. And how, even though you may have a very good point under direct review, how do I get over the hurdle that there's an additional wall to climb with respect to habeas? Because the court, the Delaware Supreme Court and the district court here, and the sentencing judge when asked to review all relied on the fact that the judge had discretion and therefore there can be no prejudice. And that's not what the law is. That's clearly contrary to what the law is. There has to be some analysis of whether there was prejudice, whether the breach under Brecht seriously influenced the outcome. And, you know, you had at his plea hearing, the judge when she took the plea said, I'm going to be looking at culpability. The prosecutor then tailored her presentation to the court to portray Claude Lacombe as bad or worse than the person who's got to get two life sentences. And then the judge, in her sentencing remarks, her brief remarks explaining her sentence, said that based on the culpability that that's what she's relying on to impose this life sentence. And so, you know, you've got a straight line connecting one piece of this to the other. And at the center of that is the breach that was occasioned by the prosecutor advocating the way that she did and portraying Claude Lacombe in the light that she did and wasn't even responsive to questions by the judge. Instead, used the questioning as a platform to launch into this discussion about what was found in the room. The State court here found that there was no breach. You've alleged that it erred in considering prejudice as part of that analysis. But that's not entirely clear from the way the opinion is written. It could be read. And under AEDPA, we're supposed to give the benefit of the doubt to the State courts that they're following the law. That the prejudice analysis was just for the Strickland piece and not for the merits analysis. Right? I think that's right. But I think that. If we're reviewing then whether the determination that there was no breach was an unreasonable application of the law, we've got the different ends of the spectrum of Dunn on the one hand and Santabello itself on the other. We don't have a case quite like this one from the Supreme Court where there was a follow-through on the recommendation that the government had promised to give, but all of these other things that are said that seem to be a sort of wink and a nod of urging the court to do something different than that recommendation. We've got this sort of unique case on these facts that falls in between. How could we say that there is a violation of a clearly established federal law? First of all, Santabello talks about the reasonable expectations of what the defendant bargained for. And courts have uniformly and I think correctly applied that to the entire context of whatever the alleged breach was, both by prosecutors and defense lawyers. But again, they followed through on the letter of their recommendation of giving the recommendation of 22, even though they said all these other things. And on habeas, we're reviewing to see if there was an unreasonable application of clearly established Supreme Court case law. What is a clearly established case that has facts like this where they did follow through but said a lot of other inconsistent things? I'm not aware of that case getting to the Supreme Court. Those cases are in the circuits, in this circuit, all relying on Santabello and with the understanding that you need to engage in this. Principles of contract, and even Puckett talks about principles of contract being applicable. And if you've got a contract, that that's the appropriate level of analysis that's required. And it's not just the strict terms of the contract. It's not the, there has to be a broader understanding of what the contract, the context of those words were. I'm saying we agree with you that the Delaware Supreme Court engaged in an unreasonable application of Santabello on the substantive claim. So the consequence of that would be that we don't give it a deference, right? Correct, right. We still have to do an evaluation to determine if there was a constitutional violation, but then we're doing it on plenary review. Right. Right? Let's say you get over that hurdle, too, and we conclude with the things that were said here, that it's so in violation of the spirit of the agreement that it's a Santabello error. Then you have to get to the Kodiakus harmless error standard. And Puckett tells us the question for prejudice is not about whether, in retrospect, the defendant would have entered a plea or not, had he known what was going to happen. It's whether this sentencing judge would have entered a different sentence. So what's your best argument as to why there was prejudice here? If we get to that point of the analysis. Because you've got, as I said before, this straight line between what the judge said at the plea hearing, what took place at the sentencing hearing, and what the judge explained when she imposed sentence. And one thing that's missing and makes it somewhat artificial in the hypothesis is that you don't know what the prosecutor could or should have said if she's going to engage on the one hand in this, which she did, but what she could have offered to explain why the agreement was reached, why it's fair, why this is the recommendation of the state. And if the state can't recommend, you know, even without enthusiasm, if they can't stand by what they've promised and recommended, then they shouldn't induce a plea based on that promise. And so, you know, that's my best argument for prejudice, that you've got this straight line between these pieces. Well, it sounds like part of that argument is prejudice, but I also hear you making the public policy argument that you make in your brief as well, that countenancing this would give a green light to prosecutors going this far in violating the spirit of an agreement. Accepting that as a legitimate concern, that seems to be one that the Delaware Supreme Court itself acknowledged and made note of, but nonetheless concluded that that line wasn't crossed here. Right. As they have said on several occasions in similar contexts, the prosecutors should have shown more restraint, but. That's exactly what Justice Valla-Forest said in her opinion. Should have probably shown more restraint, but they did not cross the line. And in any event, there was no prejudice because the sentencing court wasn't bound by the recommendation. Right. And that, I mean. Made. You know, I've made the argument that that's not the test, that because there's discretion doesn't mean there can't be prejudice. And that's, you know, it proves itself, and I would respectfully submit is wrong. Did Roth have any further questions? We are in a position to ignore what the Delaware Supreme Court said, right? No, but you're the it's to assess whether it comports with controlling Supreme Court law. I have no further questions. Thank you. Thank you. Very little. The hacker hacky. I hate. Take. Okay. Good morning, Your Honors. If it may please the court. Carolyn Hake on behalf of the appellees. As as the appellant has acknowledged, this review is not on direct appeal. This is the appeal from a federal habeas denial, which has is governed by at. And under that, there's a very high standard review. It's not the same standard review as direct appeal here. They would have appellants. Appellant has to show that the Delaware Supreme Court's decision was not contrary to or a reasonable application of a prior decision of the United States Supreme Court or and that the he would have to show is not based on a reasonable determination of the facts. But the Delaware Supreme Court didn't engage in a harmless error analysis here, right? It did not. But there's case law that the state court does not have to engage in a harmless error for a harmless error to apply in a federal habeas review. I don't know if it's U.S. Supreme Court decision, but there is a. Well, what we're reviewing is the decision that it did reach. And that decision was simply that there's no breach at all, that there's no breach at all. That's that's correct. They did not analyze the prejudice on the freestanding claim. They analyzed prejudice under Strickland. Now, under pocket, they that case, I believe, stands for the fact that they could have applied a plain error standard review because this error was not preserved as they use that term. That may apply to us if we got that far in the analysis. Right. We would have to first determine whether the Delaware Supreme Court unreasonably applied Sanabella. And since it didn't engage in harmless error analysis itself, we're just looking at whether the first part, the first step in that analysis is whether the determination that there was no breach was an unreasonable application of Supreme Court case law. Why isn't it when the prosecutor here, I mean, if you were if you were coming up with facts for your law school exam and wanted to sort of skew it one way, wouldn't this be a sort of textbook case where the prosecutor has been told at the time of plea that court is going to look at the relative culpability of the different defendants and then at the sentencing itself where there's a mandatory minimum of the 21 years. So there's there's there's the contract was for 22. So presumably this purportedly just for that one year above the mandatory minimum is making the statements that your your colleague laid out, including to the point of saying that he he didn't pull the trigger, but he may as well have comparing him to the person being sentenced contemporaneously to life. Why? Why isn't that you're both giving and taking away? They said 21 to 22 years, but in all other respects, isn't this identical to Dunn? I do not believe so, Your Honor. I mean, here they had there was nothing binding them in the plea agreement to not address aggravating factors here. It was reasonable to address aggravating factors in the sense of they're asking for 22 years instead of the minimum of 21. And they were asking for a long period of probation as well. And this case involved four defendants and they were all being sentenced to two on the same day. It was the appellant and his brother. And then the next day there was going to be another another codefendant who had been in the car where the shooting happened. And then I'm not sure what the date. I think the other one was going to be the driver who stayed in the car with the appellant. There's an agreement. Brother is going to be sentenced to life. So making the comparison that this defendant is, you know, at least if not more culpable than that defendant doesn't seem like an argument in good faith in support of 22 years, does it? Well, I think it's tied to it was tied to the sentence recommendation because it was explaining why I think it was an artful. And I think it was explaining why you have four codefendants. The other person stayed in the car with the appellant. The recommendation was for a lot fewer years. That defendant is not guilty. How old were the Lacombe brothers roughly when this happened? How old were the Lacombe brothers when they were sentenced? I believe that the appellant was 25 and I think he was the older brother. So I believe his younger brother was sentenced to life, which actuarial tables probably would give him another 50 some years. Well, I think I think in Delaware it would be life. It's natural life. But I understood. But if you look at actuarial tables, assuming he lives to be 75, he's 22. That's 53 years additional. And yet Claude was getting 22 years. So that's much, much, much less than 53 years. So that's what you agreed to. And then at the sentencing to say, goodness gracious, he might as well pull the trigger. It's almost saying forget the 22. Oh, and the way he reads, he didn't pull the trigger, but he may as well have because he set the whole thing in play. Now he has pled a series of charges before this court. And the state is recommending that he receive 22 years. I mean, it's like it's almost like wink, wink. I know what we've agreed to, but I don't make no sense. I think that the prosecutor I I think she was trying to explain because the judge had asked her to explain on relative culpability. And we're sort of trying to explain that. Although Claude, the appellate stayed in the car with this other driver, it was different. But I agree. I mean, it was definitely an artful comment. And but I mean, in fact, you wouldn't be here today if it wasn't for that artful comment. Right. That's correct. But here the plea agreement didn't. They could have you know, they could have put in the plea agreement not to address aggravating factors here. There was nothing limiting the discussion by the prosecutor of the of the aggravating factors. And here there was also there was the prosecutor was allowed to talk about the victim impact statements, was allowed to bring up the present sort of investigation of the facts. You see, there's nothing limiting it. Isn't that the whole point of Santabello? I mean, there must be a limit on aggravating factors that a prosecutor can bring up when they have agreed to a particular recommendation. If Santabello is still good law. Right. Well, I think that if you if you're if there's not if you're not recommending the mandatory minimum, then I think you have to explain the basis for why you're asking for more than that. And so the aggravating factors would come into play here. There was no objection at the sentencing hearing. So I do not believe Santabello would apply because in Santabello, the objection was lodged at the hearing. Santabello always applied to the contracts or contract. I mean, it's a general statement. That general statement applies. Yes, your honor. But the result. Recent experience indicated to us that he must be very careful when you enter into a plea agreement about what the prosecutor will do or won't do. And granted, you should have an attorney as a defendant helping you. But is it not, as I remember from years ago, in many ways, it was a game as to what the plea agreement said and what the prosecutor could do. Now, maybe we're whipping prosecutors back into place that they should have been in the first place. But even so, it's an area of bargaining where I think the parties have to be extremely careful about what they're committing to and what they may have not committed to or omitted from the bargain, because if it's the defendant, the prosecution is going to be right on top of it and and perhaps has been hiding that little bit of trick up its sleeve all the time. Correct. I mean, I think there's there's definitely in the case, though, they don't they don't want you. There's a gamemanship kind of almost argument to as well that you want to object to things at the time rather than wait to see what the sentence is and then bring it up later. Here, it just goes to our standard of review. Yes. Right. But not to whether there was a breach or not. Right. Right. Correct. I mean, so the breach here, I mean, the Delaware Supreme Court looked at this and I mean, as your honors have noted, they they put some language in there that this was close to the line, but they did not view it as a breach in the in their opinion, denying the or affirming the denial. What would be I mean, these facts seem like they go as far as you could go in. It's it seems to be on all fours with done, but for tacking on at the very end. And we recommend 22 years. I mean, I think here, if they if they have asked for more time than they did, if they had asked if they made some statement like, you know, your honor, you're not bound by this recommendation because there's case law that that constitutes a breach. I mean, if they had said, your honor, we're recommending 22. But, you know, we don't see how the roles here. If they made some additional comment, I think indicating that they weren't standing by the 22 years. But the comment was made that don't be full comment was made. And then immediately following that was the recommendation for 22 years, followed by lengthy probation. So it's sort of you have to read this comment, I think, as a dollar Supreme Court indicated in context, because if you look at it or maybe I'm thinking of the district court opinion, like if you read it in context with the don't be fooled comment, it's because this is a joint sentencing with the two brothers. It also adds a layer, I think, of a complexity here for the prosecutor's remarks at the sentencing. But it's immediately followed by the we recommend 22 years. And I don't think this is a case where they were. I mean, as later it's in the appendix. There were two sentence modification motions before the same sentencing judge and one of them, the state didn't oppose the recommendation and the response, which is in the appellant's appendix. It says they didn't intend the prosecutor didn't intend in any way to make a higher recommendation. So I think looking back at it, it was an artful definitely, but it did not cross. It was not a breach. I think to be a breach, they would have had to have said something like that would explicitly disavow their 22 years. So other other than saying we recommend 22 years, we said other than saying we are now suggesting that it be 50 years. Actually recommending something explicitly other than 22 years. You couldn't have a violation of Santabella. Is that that's the government's position. I don't think the government goes that far on it. I mean, I think if we had said to the court that you could, you're not bound by this. If we had reminded you're not bound by this recommendation, you can sentence him more. And I think if the court knows it's not bound by the recommendation, but where the prosecutor spends their their time at sentencing, making the contrast to someone getting life in prison and saying this person is more responsible than they are. They may have. They weren't actually doing those things, but they may as well have. They were the mastermind. They were the one that put all this in motion. How how is that not all but saying some this guy got life. And so appellant should have even more. I mean, I think I think that the state went into it just laying out the presentence, you know, investigation of where these these various ones were. And I think the only thing I mean, they were trying to explain why the aggravating circumstances were such that they were recommending 22 years. All of this was for an additional one year above the mandatory minimum. Well, and also a lengthy probation, which, you know, here they were asking for a lengthy. It didn't say a certain amount, but a lengthy probation, which because of his role and what had happened, I think they were that was part of the sentencing argument by the prosecutor. And part of the reason they brought this up was to explain why reasons for the lengthy probation. So it's not just the one year additional. It's also the lengthy probation period. I realize post hoc that that comes up as a reason for making these statements. But other than the single line about lengthy probation, I mean, it was there. Was there some specific recommendation for something that was so extraordinary in terms of probation that it would justify saying, this person is comparable in their culpability to this person who got life imprisonment? I mean, I think the court because the court had discretion on the probation and the plea agreement didn't mention a specific amount. When you say you might as well pull the trigger. What you're really saying is he should have got the same sentence as his brother. I don't I don't recall him using those exact words. But he may have. He didn't pull the trigger, but he may as well have. And when you say that, I mean, it sounds like back to Judge Krause's question. This sounds a lot like Dunn. And remember, Dunn was on habeas review, not drug review. Correct. Dunn was now. Dunn was before the before Brecht, I believe. Before Puckett, Dunn was 2001 and Brecht was before that. Right. And then Puckett was after that. Puckett was 2007. Right. Which was the fact it wasn't a structural error. I'm sorry. I see my time is up. Yes, the question. I have no further questions. That's fine. If you want to finish your thought. OK, I'm sorry. Just that Sanabella, you know, had to do with. I mean, I'm sorry. Puckett had to do with it. It has to be a structural. It's not a structural. It's not structural, but it's still I mean, as Judge Krause says, it's still good law in effect. And but for the Dunn not having an actual recommendation sentence in by the prosecutor, this pretty much is seems to be on all fours otherwise. And it was habeas review. It was habeas review, Your Honor. Although it didn't. If the court were to decide that there was a breach under AEDPA that they were able to find, it was unreasonable to find there was not a breach or that there was a that the appellate had presented by clear and convincing evidence to rebut the factual findings. There was no breach. Then there's still this harmless error under Brecht as Puckett and Puckett under Brecht. So if this case were coming up on direct review, would you concede that there was a Sanabella error and it was reversible error? I would not, Your Honor, because they did not preserve this. And I think Sanabella only is limited to the facts. It is limited to where someone preserved it, preserved the error. And under Puckett, if he didn't preserve the error, then there's a plain error standard review. Judge Roth, questions? Actually, that's a dumb question. But if he had preserved it, what would your answer be to Judge Krause's question? If he had preserved it, so then he would be under Sanabella. And Sanabella did not look at it as being a prejudice. They just remanded it back because they looked at the whole trust between the defense and the prosecutor for the reason. And they didn't base it on structural error, although they did talk about it being a structural error. But Puckett, you have to look at under Sanabella. Now, you would have to look under Puckett, and Puckett says it's not a structural error. No, no. Let's take her question, and let's assume that it was preserved by counsel, so it's not plain error. So forget Puckett for the moment. Okay. What would your answer be? Was there a breach? Under Sanabella, I think that our position has been there is no breach because they didn't explicitly. They did what they said they were going to do. We got the fruit of the bargain. We recommended 22 years. The bargain was he knew, as he said in his plea colloquy, that he could be sentenced for up to nine years. So you're saying your case is qualitatively different than Dunn? I mean, that one, I think, I mean, that case, like, so the prosecutor there didn't mention the standard guideline range. And Judge Cross noted that at the very outset. Right. But for that, if this were on direct review, is this case so similar, what would the State have done then? It was preserved, so this is not plain error. What would the State have said? There should be an easy answer to that. The State would have said there was no breach, I mean, to the. . . Because that's what you argued before the Delaware Supreme Court, at least on the Strickland. Right. It's the government's position that unless, as long as the prosecutor has said the recommended number of years, that there can be no breach of the plea agreement, even on direct appeal, even preserved. I think you, I mean, the prosecutor has to be cautious when they're commenting during sentencing. But here, I mean, I think. . . Cautious for what? What is the standard? What are they being cautious about? Well, that you're giving, so you have the plea agreement and that you're doing what you said you would do in a plea agreement, which here was to recommend 22 years. So we're back to as long as they say the magic words of this number of years that's in the plea agreement, then categorically there cannot be a breach of the agreement under Sanabella. I think here, I mean, the Delaware courts looked at it as an implied covenant of good faith and fair dealing, that you couldn't just do one thing and then do something sort of, you know, like Your Honor said, you know, wink, wink. And here, I mean, that wasn't. . . This was argued, and they rejected that. And I think, you know, the Court's decision is correct. I mean, it was close. I mean, the prosecutor should have been more constrained in her remarks to the Court's question at sentencing. I mean, the judge isn't bound by the plea agreement to her remarks and her questions, but the prosecutor is. And so in recommending 22 years, I mean, I understand Your Honor's point of this is only for one year more and more probation versus the co-defendant who was getting a mandatory life sentence. But, you know, here the comment, I think because she was not bound by the plea agreement not to discuss the aggravating factors, I think it was reasonable for her to talk about the aggravating factors. What do you, with the public policy concern that has been raised by your colleague on the other side of the aisle here, if we simply affirm, are we countenancing all future cases where the prosecutor can go as far as the prosecutor here in saying everything but we want something a lot more than 22 years? I don't think, Your Honor, you would be. Because here, I mean, the Delaware Supreme Court is mindful of this. I mean, they have on a couple of occasions mentioned this where they've looked at the remarks. And I think they examine it, you know, pretty closely on direct appeal. Have they ever said there's a breach? What's that? I'm sorry. The Delaware Supreme Court has it ever said there is a breach? Or is it simply every time these cases come up, even with fairly egregious facts, saying, well, this may have been, you know, intemperate, but it doesn't cross the line? No case comes to mind. But I believe they have found breaches. I just, nothing's coming to my mind at the moment. I know there was Dunn, which is a Delaware Supreme Court case where they didn't find a breach. And I think there's another one in our papers, but. Did. Yes. But that it cited to. And we did. I know the Third Circuit did. Okay. And didn't find any cases where they found. In Dunn. Oh, in Dunn. Yes, Your Honor. I'm sorry. I thought you meant Delaware Supreme Court. So I don't think the public policy, I mean, that's for the Delaware State Courts to address. But I think, I mean, there is, under the habeas review, you have, there's a, I guess, one of the things behind it is to give, like, the state courts the ability to adjudicate the criminal, you know, prosecutions and trials and sentencing. So I think there's a comedy-like concern that is also given that it's for the state courts to determine the public policy. Thank you. Thank you. Thank you, Your Honor. And we would, I'm sorry, the state, or Kelly would ask to refer. Your Honor, just very briefly, the, as I understood Ms. Haight to say that had the prosecutor during her remarks said, reminded the court that she was free to disregard the recommendation, that that would have been a breach. And just before the reference to the 22-year recommendation, the prosecutor, in the context of the don't be fooled comment, said no matter what sentence you impose. And if that's not reminding the judge that she's not bound, especially in the context of a mandatory 21 versus a recommended 22, if that's not reminding the court that they're not bound by this recommendation, I don't know what is. But you also have the sentencing judge say, look, in effect, I would have, when I look at the record before me, and especially the victim impact statements, this was really bad. I agree. It was a very, I mean, you can just, it's palpable from the transcripts how charged and difficult this was. And I think that, you know, frankly, in that atmosphere, you know, you can understand why a prosecutor might. I also remember this sentencing judge was a former attorney general for the state. I didn't know that. But, you know, it's a difficult situation. But the state made an agreement. They agreed to make a specific recommendation. And they, as I've said, I think they violated that. And as far as prejudice goes, you know, Puckett talks about the seriousness of the breach in terms of weighing the prejudice. I would say this was a pretty serious breach. And as Your Honor pointed out in terms of ineffective assistance or the hypothetical was, well, if there had been an objection, there, you know, we wouldn't be talking about prejudice. We'd be done versus Collin and Santabella. But so but Puckett also says that the prejudice is the sentencing. So is it your understanding after Puckett that prejudice is also part of the analysis on direct review with a with a preserved claim? No, not with a preserved claim. I don't think I I don't read Puckett that they're saying that they did. You know, if they wanted to overrule that part of Santabella, they would have said so. They didn't. They said, you know, that the rule. And in fact, they acknowledge that the rule in Santabella remained valid. So they raise the question and seem to go out of their way to raise the question about whether it's properly viewed as structural error anymore. Right. And it's not viewed as structural error. If it's just trial error, then wouldn't there need to be a showing of some prejudice even on direct appeal? I don't think so. I think because of the of. You know, although the the public policy concerns identified in both Santabella and done are recharacterized in Puckett as being. But isn't harmless error another way of saying prejudice? Most of the time, yes. Yeah, that certainly seemed to be the case in Puckett. Yeah. So it might be Chapman rather than than Brecht and Kodiak. Then the government would have to show that it was harmless beyond a reasonable doubt. But on direct appeal, would it do you agree after Puckett with a preserved claim that it would be subject to harmless error? I don't. I still think that if if there's a breach after after Puckett, you know, as of this minute, Santabella would still control. So is that to say Santabella is a structural error for purposes of direct appeal and a trial error for purposes of. Yeah. If not defined as a structural error. I mean, you know, it is a an error that that goes. It is different in kind than than, say, a trial error where, you know, whether the evidence was introduced or wasn't allowed to be introduced or whatever. And you can weigh all of the surrounding circumstances and the rest of the evidence and so forth. Whereas in the context of of a plea that has been violated and there has been an objection and the judge rules that, you know, there that there has not been a violation of the plea agreement, then those public policy concerns, I think. Provide for, if not structural error, as close to structural error as as as there can be. And so, you know, I mean, that that's that's my argument. OK. Any other questions? No questions. Thank you. Thank you. All right. We thank both counsel for the argument. We'll take the case.